**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RICARDO CANTU, JR., | ) | Case No. 15-14556-BFK |
| | ) | Chapter 13 |
| Debtor. | ) | |

**MEMORANDUM OPINION**

This case comes before the Court on: (a) the Chapter 13 Trustee's Objections to the Debtor's claim of exemptions (Amended Schedule C); and (b) the Chapter 13 Trustee's Objections to the Debtor's Amended Plan. The Court sustains the Trustee's Objections to the Debtor's claim of exemptions and overrules the Trustee's Objections to the Debtor's Amended Plan.

**Findings of Fact**

The following facts are not genuinely in dispute:

A.  *The Debtor's Bankruptcy Filing and His Initial Chapter 13 Plan.*

1.   The Debtor filed a Voluntary Petition under Chapter 13 with this Court on December 31, 2015. Docket No. 1. His income is above-median. Docket No. 10 (Official Forms 122C-1, 122C-2).

2.   The Debtor filed his initial Chapter 13 Plan on January 14, 2016. Docket No. 11. The Debtor attached a copy of his Schedule I to the Plan, under which he deducted $0.00 for voluntary contributions to a retirement plan, and $338.37 for required repayments on two retirement fund loans. *Id*. at Schedule I, Lines 5c, 5d.

3.   The Debtor's initial Chapter 13 Plan was denied confirmation. Docket No. 20.

B. *The Debtor's Amended Chapter 13 Plan.*

4. On March 31, 2016, the Debtor filed an Amended Chapter 13 Plan. Docket No. 22. The Amended Plan called for payments of $1,250.00 per month for 6 months and then $810.00 per month for 54 months, for total plan funding of $51,240.00. *Id*. at ¶ 1. This, according to the Amended Plan, will result in a distribution to unsecured creditors of approximately 13% of their allowed claims. *Id*. at ¶ 4.

5. At the same time, the Debtor filed Amended Schedules B and C. Docket No. 23. In his Amended Schedule B, the Debtor identified $804.00 in "future income from 1/21/2016 – 5/11/2016 from a retirement loan being paid off on 1/20/2016." *Id*. at Amended Schedule B, ¶ 16. In his Amended Schedule C, the Debtor claimed this $804.00 as exempt pursuant to Va. Code § 34-4, Virginia's wildcard exemption statute. *Id*. at Schedule C, ¶ 2; *see also* Va. Code Ann. § 34-4 (West 2016).[1]

6. One of the Debtor's retirement fund loans was paid in full in January 2016. Accordingly, the Debtor attached an Amended Schedule I to his Amended Plan, under which the Debtor indicated that he will pay $268.62 per month as a voluntary contribution to his retirement plan, and will continue to pay $69.75 in required repayments on the other retirement fund loan. Docket No. 22, Schedule I, Lines 5c and 5d.

7. The Trustee filed an Objection to confirmation of the Debtor's Amended Chapter 13 Plan, on the grounds of good faith and disposable income. Docket No. 24.

8. The Trustee also filed an Objection to the Debtor's Amended Schedule C. Docket No. 25.

---

[1] Virginia is an opt-out state. Va. Code Ann. § 34-3.1 (West 2016). Debtors, therefore, are only allowed the exemptions afforded by the Virginia Code and may not claim the federal exemptions set out in the Bankruptcy Code. 11 U.S.C. § 522(b)(2), (3).

*C. The May 12, 2016, Hearing.*

9. The Court held a hearing on May 12, 2016. At the hearing, Debtor's counsel argued that the Debtor was entitled to exempt the income represented by the savings in not having to pay his retirement fund loan under either Va. Code § 34-29 (which allows an exemption from garnishment of 75% of wages for non-support debts) or Va. Code § 34-4 (the wildcard exemption, which allows an exemption of up to $5,000 in value - $10,000 for those over 65 – plus $500 for each dependent). *See* Va. Code Ann. § 34-29 (West 2016); Va. Code Ann. § 34-4 (West 2016).[2]

10. Debtor's counsel represented to the Court that the Debtor's employer refused to allow him to make voluntary contributions to his retirement plan because he had taken out two hardship loans under the same plan. Debtor's counsel also represented that the proposed $268.62 per month in voluntary contributions were about one-third of what the Debtor legally would be entitled to contribute to his retirement plan, outside of bankruptcy. These representations were not challenged by the Chapter 13 Trustee, and the Court accepts them.

11. The Court ruled from the bench that it would sustain the Trustee's Objection to the Debtor's claim of exemption under Va. Code § 34-29, on the ground that such a claim of exemption was inconsistent with Bankruptcy Code § 1306(a)(2), which defines property of the estate to include "earnings from services performed by the debtor after the commencement of the case." 11 U.S.C. § 1306; Docket No. 29 (Order Sustaining Trustee's Objection in Part). The Court took under advisement: (a) the Trustee's Objection to the Debtor's claim of exemption

---

[2] As noted above, the Debtor only claimed an exemption under Va. Code § 34-4 for the Debtor's wages. The Court allowed Debtor's counsel to argue in the alternative that the wages were exempt under Va. Code § 34-29 because the Debtor can amend his exemptions at any time. Fed. R. Bankr. P. 1009(a).

3

under Va. Code § 34-4; and (b) the Trustee's Objection to confirmation of the Debtor's Amended Plan. *Id.*

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) ("allowance or disallowance of . . . exemptions from property of the estate"), and (L) (confirmation of plans).

### I.     The Debtor's Claim of Exemption in Post-Petition Income.

Section 1306(a)(2) provides that property of the estate includes, in addition to the property specified in Section 541, "earnings from services performed by the debtor after the commencement of the case . . . " 11 U.S.C. § 1306(a)(2). Section 1325(b) of the Code requires that, if the trustee or the holder of an allowed unsecured claim objects, the Debtor must either pay all allowed claims in full or the plan must provide that "all of the debtor's projected disposable income" be devoted to the Debtor's Chapter 13 Plan. 11 U.S.C. § 1325(b)(1)(B). For above-median debtors, the debtor's disposable income is measured by the means test contained in Sections 1325(b)(2) and (3), and 707(b) of the Code. 11 U.S.C. §§ 1325(b)(2)-(3), 707(b). Section 101(10A) of the Code defines the debtor's current monthly income as "the average monthly income *from all sources* that the debtor receives" during the six months preceding the filing, with certain exclusions and adjustments not relevant here. 11 U.S.C. § 101(10A) (emphasis added).

The Trustee argues that the Debtor's claim of exemption under Va. Code § 34-4 cannot be allowed because the Debtor had not yet earned the income as of the date of the petition. This, however, is not a bar to a claim of exemptions. *In re Walz,* 546 B.R. 836, 840 (Bankr. D. Minn.

2016) (allowing exemption in post-petition inheritance; "the Code does not limit exemptions to property owned by the debtor as of the petition date"); *In re Walley*, 525 B.R. 320, 325 (Bankr. E.D. Va. 2015) ("There is nothing in the language of §§ 1306 or 541 to suggest that Congress intended to limit an individual's exemptions to only that property of the estate owned at the commencement of the case and to deny the debtor the opportunity to assert any remaining allowed exemptions in property of the estate acquired after the bankruptcy filing.")

Rather, the Debtor's claim of exemption cannot be allowed under Va. Code § 34-4 for the same reason that the Court denied the Debtor's claim of exemption under Va. Code § 34-29 – a claim of exemption in post-petition wages is fundamentally inconsistent with the structure of Chapter 13, which requires a debtor to devote all of his or her disposable income to the Chapter 13 Plan, subject only to certain statutory exceptions. *See Mort Ranta v. Gorman*, 721 F.3d 241, 250-51 (4th Cir. 2013) (recognizing statutory exemption for social security benefits under 11 U.S.C. § 101(10A)).[3] Other than statutorily excluded income or benefits, however, the courts have consistently held that income that might be exempt under non-bankruptcy law must be included in the Debtor's Chapter 13 plan. *Blausey v. U.S. Trustee,* 552 F.3d 1124 (9th Cir. 2009) (current monthly income includes disability insurance benefits even if they are excludable from gross income by the Internal Revenue Code); *Taylor v. United States (In re Taylor),* 212 F.3d 395, 397 (8th Cir. 2000) (affirming dismissal for substantial abuse; "[t]he fact that a pension is exempt from the reach of creditors does not preclude a bankruptcy court from finding that the pension is also disposable income for purposes of Chapter 13"); *In re Matthews*, No. 13-10521-

---

[3] The portion of the Fourth Circuit's holding in *Mort Ranta* that denial of confirmation of a Chapter 13 plan is a final, appealable order has been effectively overruled in *Bullard v. Blue Hills Bank*, 135 S.Ct. 1686 (2015). The holding in *Mort Ranta* that social security benefits are excluded from the definition of disposable income remains good law.

BFK, 2013 WL 1385221, at *9-10 (Bankr. E.D. Va. April 3, 2013) (finding bad faith for debtor's failure to include rental income from tenants by the entireties property on Schedules I and J); *In re Andrade*, No. 10-10444, 2011 WL 1559241, at *2 (Bankr. D. R.I. Mar. 16, 2011) ("most courts addressing this issue are saying that exempt property should be included as disposable income"); *In re Briggs,* 440 B.R. 490 (Bankr. N.D. Ohio 2010) (current monthly income includes exempt pension income); *In re Wyatt,* No. 08-1479-SSM, 2008 WL 4572506, at *1-2 (Bankr. E.D. Va. Oct. 10, 2008) (current monthly income includes Veterans Administration disability pay); *In re Myles,* No. 05-92125-MHM, 2006 WL 6591834, at *1 (Bankr. N.D. Ga. Mar. 9, 2006) (current monthly income includes projected tax refunds); *In re Minor*, 177 B.R. 576 (Bankr. E.D. Tenn. 1995) (worker's compensation included in disposable income); *In re Tolliver*, 257 B.R. 98 (Bankr. M.D. Fla. 2000) (proceeds of a worker's compensation settlement included in disposable income).

Any claim of exemption for post-petition wages – whether under the Virginia wage exemption statute (Va. Code § 34-29) or under the Virginia wildcard exemption statute (Va. Code § 34-4) – is fundamentally inconsistent with the requirement that the debtor devote all of his or her disposable income to the Chapter 13 plan. *See Perez v. Campbell*, 402 U.S. 637, 652 (1971) (the "controlling principle" is that "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.")

The Court will sustain the Trustee's Objection to the Debtor's Amended Schedule C insofar as the Debtor claims an exemption in his post-petition wages.

## II.     The Trustee's Disposable Income and Good Faith Objections.

The second question presented is whether the Debtor is entitled to make voluntary contributions to his retirement plan, now that he has completed the payments on one of his

retirement plan loans, where the voluntary contributions will be in the same monthly amount as his former loan payments. More specifically, the questions are: (a) whether the Debtor's voluntary retirement contributions may be deducted from his disposable income for purposes of the disposable income test under Bankruptcy Code Section 1325(b); and (b) whether such deductions are made in good faith. The Court concludes that Section 541(b)(7) of the Code allows the Debtor to deduct voluntary retirement plan contributions from his disposable income, and that the Debtor is proceeding in good faith.

Section 541 of the Bankruptcy Code defines property of the estate for all Chapters. In addition, under Chapter 13 unlike in Chapter 7, the Debtor's post-petition wages and compensation are included in property of the estate. 11 U.S.C. § 1306(a)(2) ("Property of the estate includes, in addition to the property specified in section 541 of this title . . . ") As stated by the Fourth Circuit:

> Congress has harmonized these two statutes for us. With Section 541, Congress established a general definition for bankruptcy estates. With Section 1306, it then expanded on that definition specifically for purposes of Chapter 13 cases. Thus, "Section 1306 broadens the definition of property of the estate for chapter 13 purposes to include all property acquired and all earnings from services performed by the debtor after the commencement of the case." S.Rep. No. 95–989, at 140–41 (1978).

*Carroll v. Logan*, 735 F.3d 147, 150 (4th Cir. 2013).

Bankruptcy Code Section 1325(b) requires that the debtor either pay all unsecured claims in full or devote all of his or her disposable income to the plan. Section 1325(b)(3) requires, for above-median debtors, that the Court look to the means test of Section 707(b). 11 U.S.C. § 1325(b)(3). Section 707(b), in turn refers to the debtor's "current monthly income," which is a defined term in the Code. 11 U.S.C. § 707(b). Section 101(10A) defines "current monthly

income" as "the average monthly income from all sources that the debtor receives" during the six months preceding the filing. 11 U.S.C. § 101(10A).[4]

In 2005, Congress added to the Code two provisions of relevance here. First, Congress enacted Section 1322(f), which excludes from the disposable income calculus any amounts required to pay loans to a qualified retirement plan. 11 U.S.C. § 1322(f). The Trustee does not contest that any retirement plan loan repayments that the Debtor is required to make post-petition are excluded from the calculation of the Debtor's monthly disposable income.

Second, Congress added Section 541(b)(7), which excludes from property of the estate:

(7) any amount—

(A) withheld by an employer from the wages of employees for payment as contributions—

(i) to—

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;

*except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2);* or

(ii) to a health insurance plan regulated by State law whether or not subject to such title; or

---

[4] For below-median debtors, the inquiry is whether the deduction for voluntary retirement plan contributions is "reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A). Thus, pre-BAPCPA case law would be relevant to the inquiry. *In re Bruce,* 484 B.R. 387 (Bankr. W.D. Wash. 2012).

8

> (B)  received by an employer from employees for payment as contributions—
>
> (i) to—
>
> (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>
> (II)  a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>
> (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>
> *except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2); or*
>
> (i) to a health insurance plan regulated by State law whether or not subject to such title[.]

11 U.S.C. § 541(b)(7) (emphasis added). The "except that" portions of the statute, untethered to the language that precedes them, together have become known as the "hanging paragraph" of Section 541(b)(7).

The means test form (Official Form 122C-2) contains a line for "Involuntary deductions," defined as "[t]he total monthly payroll deductions that your job requires, such as retirement contributions, union dues and uniform costs." *Chapter 13 Calculation of Your Disposable Income*, United States Courts, Line 17 (April 1, 2016), http://www.uscourts.gov/forms/means-test-forms/chapter-13-calculation-your-disposable-income, ("Follow Download Form").

Further, Line 41 of the Form states, in calculating the debtor's "monthly disposable income" for purposes of Section 1325(b)(2), the debtor is to deduct the following amounts from the debtor's "current monthly income" to arrive at the debtor's "monthly disposable income":

> The monthly total of all amounts that your employer withheld from wages as contributions for qualified retirement plans, as specified in 11 U.S.C. § 541(b)(7)

plus all required repayments of loans from retirement plans, as specified in 11 U.S.C. § 362(b)(19).

*Id*. at Line 41.

The issue of voluntary retirement contributions has been the subject of some debate in the case law in recent years. There are essentially three divergent lines of cases. The first line of cases holds that the debtor is not entitled to any deduction for voluntary retirement contributions, whether or not he or she was making voluntary retirement contributions pre-petition. *In re Seafort*, 669 F.3d 662, 674-75 (6th Cir. 2012); *In re McCullers*, 451 B.R. 498, 503-05 (Bankr. N.D. Cal. 2011); *In re Prigge*, 441 B.R. 667, 672-78 (Bankr. D. Mont. 2010). The second view, that voluntary retirement contributions may be continued post-petition as long as they are consistent with the debtor's pre-petition history of contributions, is represented by the Sixth Circuit Bankruptcy Appellate Panel's decision in *In re Seafort*, 437 B.R. 204 (6th Cir. B.A.P. 2010), *aff'd*, 669 F.3d 662 (6th Cir. 2012). The third line of cases, which is the majority view, concludes that Section 541(b)(7) allows the deduction, whether or not the debtor was making voluntary contributions prior to the bankruptcy filing, but subject to a determination of the debtor's good faith. *In re Valandingham*, 516 B.R. 628 (Bankr. D. Kan. 2014); *In re Johnson*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006). The Court reviews each line of cases, below.

A.  The *Prigge* View.

The first line of cases, represented by *Seafort*, *McCullers* and *Prigge*, holds that debtors may not make post-petition voluntary contributions to their retirement plans. This line of cases is in the minority. In the *Prigge* case, the debtor, who was above-median, was a participant in his employer's voluntary retirement plan and was making contributions of $1,181.08 per month (reduced to $900.00 per month after he filed for bankruptcy). *In re Prigge*, 441 B.R. at 670-71.

The *Prigge* opinion, authored by Bankruptcy Judge Kirscher, relies on the fact that voluntary retirement contributions are not excluded from the debtor's disposable monthly income in the text of either Section 1325(b) or Section 707(b)(2). *Id*. at 677. The *Prigge* court stated in a footnote that Section 541(b)(7)'s exclusion of pension contributions from property of the estate "seems intended to protect amounts withheld by employers from employees that are in the employer's hands at the time of filing of bankruptcy, prior to remission of the funds to the plan." *Id*. at 677, n. 5 (quoting 5 COLLIER ON BANKRUPTCY ¶ 541.22C[1] (15th ed. rev.))

Judge Kirscher's views in *Prigge* later came before the 9th Circuit Bankruptcy Appellate Panel in *In re Parks*, 475 B.R. 703 (9th Cir. B.A.P. 2012). In *Parks*, as in *Prigge*, the debtors were making voluntary retirement contributions, pre-petition. *Id*. at 705. The Chapter 13 Trustee objected, and Judge Kirscher sustained the Trustee's objection, relying on his previous decision in *Prigge*. *Id*. The debtors appealed. The Ninth Circuit B.A.P. affirmed, holding that "'such amount' referred to in the hanging paragraph of § 541(b)(7)(A) means only pre-petition contributions shall not constitute disposable income." *Id*. at 708. The court noted that "nowhere in chapter 13 are voluntary retirement contributions excluded from disposable income." *Id.* The court held:

> Simply put, without a clearer direction comparable to the carve out from disposable income for the repayment of retirement loans in § 1322(f), it seems unlikely that Congress intended § 541(b)(7)(A) to bestow a benefit on above-median chapter 13 debtors while their creditors absorbed an even greater loss.

*Id*. at 709; *see also In re McCullers*, 451 B.R. at 505 ("In using the words 'except that,' Congress suggests that its only purpose was to negate any inference that the exclusion of such contributions from property of the estate gives rise to income to the debtor.")

11

The *Seafort* case is the only Court of Appeals decision to address the issue. *Seafort* actually involved two cases, those of Ms. Seafort and the Shulers. The facts in *Seafort* mirror more accurately the facts in this case because, in *Seafort*, the debtors were repaying pension plan loans and as a result were not making voluntary pre-petition contributions to their pension plans. *In re Seafort*, 669 F.3d at 663-64. Once the loans were repaid, however, the debtors sought to apply that income to post-petition voluntary contributions. *Id*. The Sixth Circuit agreed with the views expressed in *Prigge* and *McCullers*, that "Congress intended to exclude from disposable income and projected disposable income available for unsecured creditors only voluntary retirement contributions already in existence at the time the petition is filed." *Id*. at 674. The Trustee in the case conceded that "if a debtor is making voluntary retirement contributions when the bankruptcy petition is filed, such continuing contributions may be excluded from disposable income." *Id*. at 674, n. 7. The Sixth Circuit, however, stated that it did *not* agree with this assertion for the reasons stated in *Prigge*, but that it did not reach the issue because the issue was not before it. *Id*.

    B.  *The Sixth Circuit Bankruptcy Appellate Panel's Decision in Seafort.*

The Sixth Circuit Bankruptcy Appellate Panel's decision in *Seafort* held that debtors may continue to make voluntary contributions to their retirement plans if the debtor was making contributions in comparable amounts pre-petition. 437 B.R. at 209-10. Like the Sixth Circuit, the B.A.P. placed significance on the placement of the exclusion from disposable income in the Code. *Id*. at 209 ("Because Congress identified 401(k) contributions as excluded in § 541, but not in § 1306, the Panel concludes that the absence of any reference in § 1306 to 401(k) contributions was intentional.")

12

After consideration of the competing policy concerns - BAPCPA's desire "to ensure debtors repay creditors the maximum they can afford," versus Congress's encouragement of retirement savings for all Americans – the B.A.P. reached the following conclusion:

> In regard to retirement savings, Congress clearly intended to strike a balance between protecting debtors' ability to save for their retirement, and requiring that debtors pay their creditors the maximum amount they can afford to pay. This balance is best achieved by permitting debtors who are making contributions to a Qualified Plan at the time their case is filed to continue making contributions, while requiring debtors who are not making contributions at the time a case is filed to commit post-petition income which becomes available to the repayment of creditors rather than their own retirement plan. To conclude otherwise encourages the improvident behavior that BAPCPA sought to discourage. If the bankruptcy court is affirmed, debtors who were not contributing to their tax qualified plan and borrowing against their own retirement savings may file bankruptcy, repay themselves, and, once the loan is repaid, start contributing again to their own retirement savings. Allowing debtors to do so would tip the delicate balance struck by BAPCPA impermissibly in favor of debtors. On the other hand, allowing debtors who are making contributions at the commencement of a case to continue making those contributions furthers the goal of encouraging retirement savings. Limiting these protections to contributions in place at the time debtors file their petitions also protects the goal of ensuring that debtors pay creditors the maximum amount debtors can afford to pay.

437 B.R. at 210.

One judge dissented from the B.A.P's decision, describing the majority's decision as "harsh and uneven." 437 B.R. at 216 (Shea-Stonum, M., dissenting). Judge Shea-Stonum argued that the majority's ruling discriminated in favor of higher-income debtors and against lower-income debtors because the former category are more likely to have made contributions consistently, pre-petition. *Id.* at 222-23. Judge Shea-Stonum also noted that the rule allowing post-petition contributions is subject to a good faith inquiry. *Id.* at 223 ("A debtor's proposal to increase or to begin Qualified Contributions post-petition is one of many circumstances that may be considered by a court in assessing the debtor's good faith.")

A number of courts have adopted the Sixth Circuit B.A.P.'s test for voluntary contributions. *In re Read*, 515 B.R. 586 (Bankr. E.D. Wis. 2014); *In re Jensen*, 496 B.R. 615, 621 (Bankr. D. Utah 2013) ("The Court agrees with the reasoning of the Sixth Circuit Bankruptcy Appellate Panel and concludes that voluntary retirement contributions being made as of the date of the petition do not constitute disposable income and debtors may continue making those contributions during the life of the plan"); *In re Noll*, No. 10-35209-svk, 2010 WL 5336916, at *1 (Bankr. E.D. Wis. Dec. 21, 2010).

C. The *Johnson View*.

In *Johnson*, the court was faced with a good faith objection from the Trustee. 346 B.R. at 256. The court unequivocally held: "So long as a debtor's contributions are within the limits permitted by the EPB [Employee Benefit Plan] 'any amount' of this contribution is exempted from disposable income." *Id*. at 263.

In *Vanlandingham*, the Debtor deducted voluntary monthly 401-K contributions in the amount of $151.67 on her means test form, contributions that she was not making pre-petition and only started after she filed for bankruptcy. 516 B.R. at 630. The court noted that Section 541(b)(7)'s hanging paragraph (which it described as "oddly worded" and "awkward") does not distinguish between pre-petition contributions and post-petition contributions. 516 B.R. at 635. The court further stated:

> In short, *Johnson's* interpretation of § 541(b)(7)'s hanging paragraph is most consistent with promoting the legislative policy of protecting and encouraging retirement savings. There is no reason to protect postpetition 401(k) loan repayments, but not postpetition 401(k) contributions in chapter 13.

*Id*. at 636.

The *Vanlandingham* court held that the *Johnson* view is also "consistent with the Supreme Court's 'forward looking approach' to the definition of 'projected disposable income' as announced in *Hamilton v. Lanning*." *Id*. at 637. In *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010), the Court held that for purposes of disposable income, bankruptcy courts may take into account (and depart from the mechanical application of the means test) changes in the debtor's income "that are known or virtually certain at the time of confirmation." *Id*. at 2478.[5]

The *Vanlandingham* court also mentioned the requirement of good faith, in stating: "when an 'abusive case' presents itself, the trustee and unsecured creditors are well-armed with the ability to object to confirmation for lack of good faith under § 1325(a)(3)." *In re Vanlandingham*, 516 B.R. at 638.

More recently, the Bankruptcy Court for the District of Massachusetts issued its opinion on post-petition retirement contributions in *In re Drapeau*, 485 B.R. 29 (Bankr. D. Mass. 2013). The *Drapeau* opinion agreed with the *Johnson* view. In its opinion, the *Drapeau* court rejected reliance on the placement of Section 541(b)(7) outside of Chapter 13:

> Section 1306 incorporates *all* of § 541 into the definition of estate property in the Chapter 13 case, including those exceptions detailed in subsection (b). And because § 541(b)(7) expressly excludes voluntary retirement contributions from the bankruptcy estate, there is no need for § 1306 to contain a duplicative provision excepting such contributions. The exception becomes applicable with the wholesale incorporation of § 541.

485 B.R. at 36 (emphasis in orginal). The *Drapeau* court also alluded to the good faith of the debtor, but held that where the debtor's ability to make voluntary contributions was interrupted by circumstances beyond the debtor's control ("e.g., a limited period in which a debtor could not

---

[5] The *Hamilton v. Lanning* analogy may be an imperfect one in this context. *Hamilton v. Lanning* involved a departure from the mechanical application of the six-month lookback period of the means test, which requires the debtor to state his or her income for the six months preceding the petition date. 130 S.Ct. at 2475-77. In this case, as in *Seafort*, the Debtor was not in fact making any voluntary retirement contributions during the six months preceding the bankruptcy filing because the Debtor was precluded from doing so, owing to the two hardship loans.

contribute on account of a hardship withdrawal"), the court found that the debtor was proceeding in good faith. *Id*. at 38-39.

    D. *This Court's Ruling.*

        *(i) The Trustee's Disposable Income Objection.*

The Trustee in this case urges the Court to adopt the middle ground of the Sixth Circuit B.A.P.'s opinion in *Seafort,* limiting contributions to those consistently made by the debtor pre-petition. The Court, however, adopts the *Johnson* view, for the simple reason that Section 541(b)(7) does not limit the debtor's ability to make contributions post-petition, nor is there any distinction between pre-petition contributions and post-petition contributions in the statute. There is nothing in the text of Section 541(b)(7) from which the Court can conclude that Congress intended any such distinctions. Indeed, the use of the term "*any amount*," without limitation, followed by the term "contributions" compels the conclusion that Congress meant no such distinction. *See* 11 U.S.C. § 541(b)(7)(A)-(B).

In the Court's view, the absolutist position represented by *Prigge* and the Sixth Circuit's opinion in *Seafort* places an unwarranted emphasis on the placement of Section 541(b)(7) outside of Chapter 13. As noted by the court in *Drapeau*, "because § 541(b)(7) expressly excludes voluntary retirement contributions from the bankruptcy estate, there is no need for § 1306 to contain a duplicative provision excepting such contributions." 485 B.R. at 36. Similarly, in *Vanlandingham*, the Court noted: "The fact that Congress's exclusion of qualified retirement contributions appears in § 541 rather than § 1325(b)(2) may best be explained by the fact that as *excluded* income, the contributions were never included in disposable income in the first instance." 516 B.R. at 636 (emphasis in original).

Further, by the time that Section 541(b)(7) was enacted in 2005, the Supreme Court had already decided that qualified retirement funds were not property of the estate under Bankruptcy Code Section 541(c)(2). *Patterson v. Shumate*, 504 U.S. 753, 756-66 (1992). Congress's intent in enacting Section 541(b)(7) was to expand upon the protections already in place at the time. *See* H.R. Rep. 109-31(1), at 63-64 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 132-33 ("Sec. 224: Protection of Retirement Savings in Bankruptcy. The intent of section 224 is to *expand* the protection for tax-favored retirement plans or arrangements that may not be already protected under Bankruptcy Code section 541(c)(2) pursuant to *Patterson v. Shumate,* or other state or Federal law.") (emphasis added). Under *Prigge* and the Sixth Circuit's opinion in *Seafort,* the enactment of Section 541(b)(7) in 2005 would have been redundant for pre-petition contributions, given 541(c)(2) and *Patterson v. Shumate*.[6]

The Court similarly rejects the middle ground represented by the Sixth Circuit B.A.P.'s opinion in *Seafort*. First, the B.A.P. relied heavily on the placement of the exclusion in Section 541(b)(7), like *Prigge* and the Sixth Circuit itself. *See In re Seafort*, 437 B.R. at 209 ("Because Congress identified 401(k) contributions as excluded in § 541, but not in § 1306, the Panel concludes that the absence of any reference in § 1306 to 401(k) contributions was intentional.") As noted above, however, "as *excluded* income, the contributions were never included in

---

[6] The Court also finds some guidance to Congressional intent in its use of the term "contributions" in Section 541(b)(7)(A) and (B). 11 U.S.C. § 541(b)(7)(A)-(B). Once pre-petition contributions are made, they become part of a retirement fund. In the 2005 BAPCPA amendments, Congress specifically used the term "retirement funds" in the amendments to Section 522, which added exemptions for debtors under both the federal exemption scheme and the State opt-out scheme. 11 U.S.C. § 522(b)(3)(C), (d)(12). If Congress meant to exclude only pre-petition retirement funds from property of the estate, it might have used the term "retirement funds" in Section 541(b)(7), instead of "contributions." Moreover, if Section 541(b)(7) was intended only to protect pre-petition retirement funds (by excluding them from property of the estate), then Section 541(b)(7) would have been redundant to Sections 522(b)(3)(C) and (d)(12), which provided exemptions for the same funds.

17

disposable income in the first instance." *In re Vanlandingham*, 516 B.R. at 636 (emphasis in original).

The Sixth Circuit B.A.P. also placed reliance on the fact that under Section 541 property of the estate is determined at the outset of the case. *In re Seafort*, 437 B.R. at 209 ("401(k) contributions are only excluded in § 541 which specifically applies to property in existence at the commencement of the case.") This view however, simply reads the exclusion of the hanging paragraph of Section 541(b)(7) ("any amount . . . shall not constitute disposable income as defined in section 1325(b)(2)"), which is clearly referring to the disposable income requirement in Chapter 13, out of the statute. 11 U.S.C. § 541(b)(7).

The Sixth Circuit B.A.P.'s requirement that post-petition contributions be comparable to the debtor's historic, pre-petition contributions appears to be grounded more in policy concerns than in the text of Section 541(b)(7). In the end, the *Johnson* line of cases hews the closest to the statutory text and Congress's intended purpose in enacting Section 541(b)(7) in 2005. The Court, therefore, overrules the Trustee's disposable income objection.

*(ii) The Debtor's Good Faith.*

Finally, good faith is an independent requirement for confirmation of a Chapter 13 plan. 11 U.S.C. § 1325(a)(3). The Court agrees with the *Johnson* and *Drapeau* opinions that the debtor's good faith must be considered. *In re Johnson*, 346 B.R. at 260-61; *In re Drapeau*, 485 B.R. at 38-39. The Court cannot conclude, however, that the Debtor is proceeding in anything other than good faith here. As in *Drapeau*, the Debtor was locked out of making voluntary contributions to his retirement plan on account of the hardship loans that he had taken out pre-petition. *In re Drapeau*, 485 B.R. at 31. The Debtor's proposed contribution of $268.62 per month is well within ERISA limits for employee contributions. *See Retirement Topics-401(k)*

*and Profit Sharing Plan Contribution Limits*, IRS (Oct. 26, 2015), https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-401k-and-profit-sharing-plan-contribution-limits ("The limit on employee elective deferrals . . . is: $18,000 in 2015 and 2016"); *see also Annual Limit on Elective Deferrals*, Federal Retirement Thrift Investment Board (December 2015), https://www.tsp.gov/PDF/formspubs/oc91-13.pdf . The Debtor has no other pension benefits available to him.

The Court finds that the Debtor is proceeding in good faith, and overrules the Chapter 13 Trustee's good faith objection.

## Conclusion

For the foregoing reasons:

A. The Trustee's Objections to the Debtor's claim of exemptions under Va. Code §§ 34-4 and 34-29 are sustained. The Trustee will submit an Order within 10 days sustaining the Objection.

B. The Trustee's Objections to the Debtor's Plan on disposable income and good faith grounds are overruled.

C. The Court will set a status hearing in this matter for **August 11, 2016, at 1:30 p.m.**[7]

Date: _____    _____
                                Brian F. Kenney
Alexandria, Virginia            United States Bankruptcy Judge

---

[7] Given that the Court has sustained the Trustee's Objections to the Debtor's claim of exemptions, the Court does not know whether the Debtor's Plan meets the liquidation test and the disposable income test of 11 U.S.C. §§ 1325(a)(4) and 1325(b).

<u>Copies to</u>:

Ricardo Cantu, Jr.
1042 Harbour Drive
Stafford, VA 22554
*Debtor*

Janet Elizabeth Boyd, Esquire
Janet E. Boyd, Attorney At Law, PLC
385 Garrisonville Rd. Ste 203
Stafford, VA 22554
*Counsel for the Debtor*

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
*Chapter 13 Trustee*